Frederick Lange, III v. Commissioner.
Lange v. Commissioner
Docket No. 27337.
United States Tax Court
T.C. Memo 1954-164; 1954 Tax Ct. Memo LEXIS 81; 13 T.C.M. (CCH) 918; T.C.M. (RIA) 54269; September 30, 1954, Filed *81 George T. Donoghue, Jr., Esq., and Richard D. Hobbet, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax and additions to tax for fraud against the petitioner as follows.. Addition to Tax
Year
Deficiency
for Fraud
1941
$ 1,452.37
$ 726.19
1942
10,567.77
5,283.89
1943
14,139.42
7,069.71
Although due notice was given, there was no appearance for the petitioner when the proceeding herein was called for trial and no proposed findings of fact or brief has been filed on his behalf. The respondent, having the burden of proof on the fraud issue, introduced evidence in support thereof. Findings of Fact Petitioner, an individual, filed his income tax returns for the years 1941, 1942 and 1943 with the collector of internal revenue for the district of Wisconsin. On them, he reported income, total deductions, net income, and tax due, as follows: 1941
1942
1943
Income
Salary
$17,640.00
$30,139.75
$35,000.00
Dividends
775.00
775.00
Interest
612.40
Total income
$17,640.00
$30,914.75
$36,387.40
Total deductions
796.73
2,096.58
3,374.71
Net income
$16,843.27
$28,818.17
$33,012.69 *
Tax due
$ 3,243.57
$11,091.46
$14,616.12
*82 Petitioner's income tax return for each of the years involved was prepared by Crystal Diedrich, an employee of Crucible Steel Casting Company, Milwaukee, Wisconsin, herein referred to as Crucible, from information furnished her by petitioner at the time she prepared the return. She included in each return all the income petitioner told her he had received. Petitioner did not state to her at the time she prepared any of the returns for the years involved that Crucible had paid substantial amounts of his personal expenses or that he had received substantial amounts of cash from Crucible's petty cash fund. The amounts reported as salaries included only petitioner's salaries from Crucible. During the years 1941, 1942 and 1943, petitioner was employed by Crucible as an executive. During 1942 and 1943, he was vice president and personnel manager. During the taxable years herein, many personal expenses of petitioner were paid by Crucible and charged by it to various company expense accounts. During these years petitioner presented many bills for personal expenses to Crucible's bookkeeper, instructing him to pay the bills and to charge them to company *83 expense. During the year 1942, Whitefish Bay Pharmacy, Inc., sold petitioner articles of merchandise, for which it submitted statements to him. The following tabulation shows the dates and amounts of such statements: Date
Amount
January 25, 1942
$ 24.14
February 25, 1942
16.03
March 25, 1942
29.37
April 25, 1942
18.88
May 25, 1942
33.84
June 25, 1942
17.60
July 31, 1942
40.69
Total
$180.55 These statements were paid by checks of Crucible on the following dates, respectively: February 3, 1942, March 4, 1942, March 31, 1942, May 5, 1942, June 4, 1942, July 7, 1942, and August 10, 1942. Crucible charged each of these checks on its books to an expense account entitled "Welfare and First Aid" or to general and administrative expense. During the year 1942, Walter Kegel papered walls and painted woodwork and walls in petitioner's residence at 510 East Beaumont Avenue, Milwaukee. He submitted two invoices for this work. One of these invoices was in the amount of $179.97, and was paid by a check of Crucible on June 9, 1942. Crucible charged this check on its books to operating expense. During the year 1942, Droegkamp Furnace Company did some sheet metal *84 work and some piping on the heating plant at petitioner's residence at 510 East Beaumont Avenue, and installed a gas furnace there. It submitted an invoice of $204.38 for this work. The invoice was paid by a check of Crucible on June 9, 1942. Crucible charged this check on its books to operating expense. During the taxable years, a number of physicians rendered professional services to petitioner or members of his family. The following tabulation shows the dates and amounts of the bills submitted to petitioner by the physicians for these services: Date
Amount
December 31, 1941
$150.00
June 5, 1942
125.00
October 31, 1943
12.00
November 1, 1943
5.00
November 1, 1943
22.50
Total
$314.50 The first two of these bills were paid by checks of Crucible on January 13, 1942, and July 1, 1942, respectively. The last three of the bills were each paid by separate checks of Crucible on November 12, 1943. Crucible charged each of these checks on its books to an expense account entitled "Welfare and First Aid." During the year 1943, R. J. Lederer Company made some furniture, a gun case and some cabinets for petitioner. It submitted several invoices to petitioner for *85 this work. Crucible paid the invoices. Included in the invoices was one for $900, paid by a check of Crucible on December 3, 1943. Crucible charged this check on its books to operating expense. R. J. Lederer Company never did any work for Crucible. During the year 1943, Paul H. Kurth Plumbing Company remodeled plumbing and heating equipment at the residence of petitioner at 510 East Beaumont Avenue, and submitted an invoice to him in the amount of $763.78 for this work. This invoice was paid by a check of Crucible on December 20, 1943. Crucible charged the check on its books to operating expense. In October 1943, Kiefert Van & Cartage Service moved petitioner's household furnishings from his residence at 510 East Beaumont Avenue, to a new residence at 7121 North Barnett Lane, and submitted an invoice to him in the amount of $152.95 for the movi g. This invoice was paid by a check of Crucible on November 23, 1943. Crucible charged the check on its books to general administrative expense. Kiefert Van & Cartage Service never did any work for Crucible. During the years 1942 and 1943, Milwaukee Gas Light Company supplied gas at petitioner's residence, first at 510 East Beaumont Avenue, *86 and later at 7121 Barnett Lane. Included in the invoices which the gas company delivered to petitioner at his residence for this service were invoices covering the following periods, for the following amounts: Period
Amount
September 23 to October 22, 1942
$ 25.60
October 22 to November 20, 1942
27.76
December 22, 1942 to January 26, 1943
47.49
January 26 to February 24, 1943
34.05
March 25 to April 23, 1943
27.89
Total
$162.79 The first two of these invoices were paid by a check of Crucible on December 4, 1942. The three remaining invoices were paid by checks of Crucible on February 4, 1943, March 16, 1943, and May 26, 1943, respectively. Crucible charged the checks on its books to expense accounts. During the years 1942 and 1943, john W. Jungbluth, a general contractor, made repairs and alterations to petitioner's residence at 510 East Beaumont Avenue and his residence at 7121 North Barnett Lane. This work was done at the direction of petitioner. Previously, Walter Lange, petitioner's father, had made an arrangement with Jungbluth, or Jungbluth's son, under which work was to be done on petitioner's residence as petitioner directed, payment therefor *87 to be made by Crucible. During 1942 Jungbluth remodeled a garage at petitioner's residence at 510 East Beaumont Avenue, added two bedrooms, and made certain repairs. The total charges for this work were $1,880.88. During 1943 Jungbluth made repairs and alterations at petitioner's residence at 7121 North Barnett Lane. Included were the hanging of overhead doors and some cement flooring in the garage. The total charges for the work done in 1943 were $2,158.21. Crucible paid all the charges for the work done by Jungbluth in 1942 and 1943. Substantial amounts of cash were received by petitioner during 1941, 1942 and 1943 from Crucible's petty cash fund, which were used by him for personal purposes and not on behalf of the company. These amounts were not included by petitioner in reporting his income. They were received by him under the guise of reimbursement for travel in Crucible's behalf, which he had not done, and under the guise of expenditures in Crucible's behalf, which he had not made. Neither the payment by Crucible during the taxable years herein of personal living expenses of petitioner, nor the above disbursement by Crucible during the same years of cash to petitioner from *88 its petty cash fund were made or intended as loans to petitioner. No receivable from petitioner was entered on the books of Crucible in connection with the payment of his living expenses or of the above cash disbursements to him. Petitioner has never repaid Crucible for any of the amounts so received or paid out in his behalf. During 1943 petitioner received interest in the amount of $2,325 on bonds owned by him. On his 1943 return, he reported as interest only $612.40. An investigation of petitioner's income tax liability for the years 1941, 1942 and 1943 was made by an internal revenue agent. At the conclusion of the investigation, the revenue agent reported to petitioner that it was his conclusion that petitioner had fraudulently failed to report income for the said years as follows: 1941
1942
1943
Personal living expenses paid by Crucible
$ 849.09
$ 8,817.46
$ 7,667.60
Cash received from Crucible's petty cash fund
2,177.06
5,380.41
6,032.12
Interest income
1,712.60
Unreported income
$3,026.15
$14,197.87
$15,412.32
Petitioner agreed to the findings of the revenue agent and stated that he would request the collector of internal revenue *89 for permission to pay the resulting deficiencies and additions to tax for fraud over a period of time. On February 25, 1947, petitioner signed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax, Form 870, consenting to the assessment and collection of the following deficiencies in income tax and additions to tax for fraud due on the unreported income found by the revenue agent for the years involved, as follows: Addition to Tax
Year
Deficiency
for Fraud
1941
$ 1,148.51
$ 574.26
1942
9,031.14
4,515.57
1943
13,473.82
5,350.47 At a date subsequent to February 25, 1947, the respondent acceded to a request by petitioner to withdraw the consent he had thus given to the assessment and collection of the deficiencies and additions to tax for fraud. The petitioner, with intent to defraud, failed to report for Federal income tax purposes various items of income for each of the years 1941, 1942 and 1943, thereby giving rise to a deficiency in income tax for each of the said years. The deficiency or a part thereof for each of the years 1941, 1942 and 1943 was due to fraud with intent to evade tax. Opinion There was no appearance *90 by or on behalf of the petitioner and no evidence was offered to carry his burden of proving error in the deficiencies in income tax as determined by the respondent. The respondent's determination of the said deficiencies is accordingly sustained. On the other hand, the respondent, to sustain his burden of proof on the fraud issue, submitted clear and convincing proof that the deficiency, or a part thereof, for each year was due to fraud with intent to evade tax, and we have so found. The respondent is likewise sustained in his determination of the 50 per cent additions to tax for fraud. Section 293(b) of the Internal Revenue Code of 1939. Decision will be entered for the respondent. Footnotes
*. Income tax net income↩